UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ERIC DEERING,**<br><br>     **Plaintiff,**<br><br>**v.**<br><br>**HACKENSACK BOARD OF EDUCATION AND JOHN/JANE DOES A THROUGH D,**<br><br>     **Defendants.** | Civ. No. 20-3890 (KM) (JBC)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

    Plaintiff Eric Deering, a math teacher employed by Hackensack Board of Education ("BOE"), has sued BOE for violations of Title VII of the Civil Rights Act of 1964 and the New Jersey Law Against Discrimination. BOE now moves to dismiss portions of the Complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that certain allegations are time-barred. Deering does not really dispute that certain individually actionable incidents occurred outside the limitation period, but argues that the complaint states an ongoing hostile work environment claim, extending into the limitation period.

    For the reasons set forth below, the motion to dismiss is **DENIED.**

1

I.      **Background**[1]

Deering has been employed by BOE as a mathematics teacher since 2006.[2] (Compl. ¶ 14-15.) Deering, who is African American, alleges that BOE discriminated against him based on his race. (*Id.* ¶ 54.) Among other allegations, Deering asserts that he was "reprimanded for actions that his [non-African American] colleagues took as well, though they faced no discipline" and that he was "denied the opportunity for potential career advancements" because white employees were given preferential treatment. (Pl. Brf. at 7.)

Many of the alleged incidents involve disciplinary memos entered into his personnel file. Deering alleges that, on an unspecified date, Principal Andrea Oates-Parchment "wrongfully" filed a disciplinary warning in Deering's personnel file regarding his tone with a co-worker. (Compl. ¶ 20.) On another occasion, after Deering told two "out of control" students to "go sit down" and "be quiet," Oates-Parchment appeared to encourage the students to write a complaint against Deering which was made part of his file. (*Id.* ¶ 21.) According to Deering, students frequently make complaints against other teachers, but those complaints are not entered into their personnel files. (*Id.* ¶ 21.) On a third occasion, Deering's Mathematics Supervisor wrote a memorandum stating he had witnessed Deering handling situations in a "firm manner," but

---

[1]     For ease of reference, certain key items from the record will be abbreviated as follows:

|  |  |  |
|---|---|---|
| "DE_" | = | Docket Entry in this Case |
| "Compl." | = | Complaint (DE 1) |
| "Def. Brf." | = | Memorandum of Law in Support of Defendant's Motion to Dismiss (DE 8) |
| "Pl. Brf." | = | Memorandum of Law in Opposition to Defendant's Motion to Dismiss (DE 9) |

[2]     The facts are described as alleged in the Complaint. For purposes of a Rule 12(b)(6) motion, the well-pleaded factual allegations of the Complaint are assumed to be true. *See* Section II, *infra.*

these accusations were not reviewed and Deering had no opportunity to respond. (*Id.* ¶ 22.)

After a February 2008 incident, a memorandum was entered into Deering's file, asserting that he was "arrogant and unprofessional" in communicating with a coworker. (*Id.* ¶ 24.) Deering requested that the incident be removed from his file, but the request was denied. He was advised to contact his union representative and consider transferring districts. (*Id.* ¶ 26.)

In April 2010, an argument with a student which allegedly involved "raised voices and raised hands to each other's faces" was documented in Deering's personnel file. (*Id.* ¶ 29-30.) The New Jersey Department of Children and Families investigated and deemed the accusation unfounded, but this was not documented in Deering's file. (*Id.* ¶ 32.)

In November 2014, a memorandum was issued against Deering stating that he had compromised the confidentiality of three students' grades by disclosing them in front of other students. (*Id.* ¶ 34.) Deering refused to sign the report and filed a grievance disputing the students' accounts. (*Id.* ¶ 35.) A memorandum was then added to Deering's file stating that one of the three students was being transferred out of Deering's class and noting that this was the third parent request that a student be transferred from Deering's class. (*Id.* ¶¶ 36-37.) Deering states that students are frequently transferred out of teachers' classrooms but that other teachers are not written up for it. (*Id.* ¶ 37.)

In September 2016, the Assistant Superintendent of Schools introduced herself to Deering as though they had not met. (*Id.* ¶ 39.) Deering filed a complaint over the comment, which he found condescending. (*Id.* ¶ 40.)

In October 2017, Deering verbally reprimanded a student. (*Id.* ¶ 43.) The student alleged that Deering asked her "why are you walking around with that ugly face?" and reported that one of her friends told her that Deering had said "if it wasn't for the law that he would hurt her." (*Id.* ¶ 44.) Following the incident, in November 2017, Deering was suspended with pay. (*Id.* ¶ 47.) In January 2018, tenure charges were filed, and Deering was suspended without

3

pay. A tenure hearing was held in August 2019. (*Id.* ¶ 48.) The arbitrator ruled that Deering was entitled to back pay, but mandated anger management programming and the loss of Deering's step and salary adjustment for 2018-2019. (*Id.*)

Upon Deering's return to the school, he faced inappropriate and disrespectful conduct from "multiple parties," including a student who told him to shut up, using profane language and a racial slur; Deering reported the incident, but the student was not disciplined. (*Id.* ¶ 51.) Deering also alleges that on some unspecified date, he was assigned to teach social studies, while a less-qualified white teacher was assigned to teach math. (Compl. at ¶ 55.) Deering completed an Equal Employment Opportunity Commission Questionnaire on January 3, 2020, and obtained a Right to Sue notice. (*Id.* ¶ 11.)

## II.    Standard of Review

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

The statute of limitations is an affirmative defense. *See* Fed. R. Civ. P. 8(c)(1). "Technically, the Federal Rules of Civil Procedure require a defendant to plead an affirmative defense, like a statute of limitations defense, in the answer, not in a motion to dismiss." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Nevertheless, on a Rule 12(b)(6) motion, a complaint may be dismissed on statute of limitations grounds, but "only when the statute of limitations defense is apparent on the face of the complaint." *Wisniewski v. Fisher,* 857 F.3d 152, 157 (3d Cir. 2017) (citing *Schmidt,* 770 F.3d at 249).

> "Since the applicability of the statute of limitations usually involves questions of fact for the jury," *Van Buskirk v. Carey Can. Mines, Ltd.*, 760 F.2d 481, 498 (3d Cir. 1985), "if the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)[,]" *Schmidt*, 770 F.3d at 249 (internal quotation marks, brackets, and citation omitted).

*Fried v. JP Morgan Chase & Co.,* 850 F.3d 590, 604 (3d Cir. 2017). In an appropriate case, a statute of limitations dismissal must take into account the the applicability of tolling doctrines. *See Wisniewski*, 857 F.3d at 157–58 (reversing dismissal and remanding for consideration of whether time spent in exhausting administrative remedies tolled the § 1983 limitation period).

### III.   Discussion

The Complaint alleges discrimination and retaliation under Title VII of the Civil Rights Act of 1964 of the New Jersey Law Against Discrimination ("NJLAD"). (Compl. at ¶¶ 52-60.) "Title VII prohibits discriminatory employment

practices based upon an individual's race, color, religion, sex, or national origin." *Shahin v. Delaware*, 424 F. App'x 90, 92–93 (3d Cir. 2011) (citations omitted). In NJLAD actions for employment discrimination, courts generally follow Title VII precedent. *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 842 (3d Cir. 2016) ("This Court's discrimination inquiry is the same for claims filed under Title VII and the NJLAD ....") (citing *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 249 (3d Cir. 2006)). The Complaint does not specifically use the term "hostile work environment," but Deering characterizes the claims as such in his opposition brief. (Pl. Brf. at 7, 8.) BOE moves to dismiss all allegations that are outside the federal and state statutes of limitations. (Def. Brf. at 5-9.)

Title VII requires an aggrieved party to file a complaint with the EEOC within 300 days after an actionable employment-related violation. 42 U.S.C. § 2000e-5(e)(1). NJLAD has a two-year statute of limitations. *See Thomas v. Care Plus of New Jersey, Inc.*, 484 F. App'x 692, 693 (3d Cir. 2012). Deering invokes the continuing violations doctrine, which "allows a plaintiff to pursue a claim for discriminatory conduct if he or she can demonstrate that each asserted act by a defendant is part of a pattern and at least one of those acts occurred within the statutory limitations period." *Sarno v. Wal-Mart Stores E., L.P.*, No. CIV.A. 12-002075 JAP, 2012 WL 5880361, at *4 (D.N.J. Nov. 20, 2012) (quoting *Smith v. Twp. of E. Greenwich*, 519 F. Supp. 2d 493, 505 (D.N.J. 2007) (quotations and citations omitted)); *see also Roa v. Roa*, 985 A.2d 1225, 1231 (N.J. 2010) (applying the continuing violations doctrine to analogous claim under NJLAD).

A hostile work environment claim is one such continuing violation. In *Morgan*, the Supreme Court held that, while discrete discriminatory acts are not actionable if they are time-barred, a hostile work environment claim is "a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). The Supreme Court recently elaborated on *Morgan*, describing its holding as

6

follows: "[A] hostile-work-environment claim is a single 'unlawful employment practice' that includes every act composing that claim, whether those acts are independently actionable or not." *Green v. Brennan*, 136 S. Ct. 1769, 1778 (2016). The entire hostile environment claim may be considered timely, then, "[p]rovided that an act contributing to the claim occurs within the filing period." *Morgan* at 117. "[E]ven if a claim of discrimination based on a single discriminatory act is time barred, that same act could still be used as part of the basis for a hostile-work-environment claim, so long as one other act that was part of that same hostile-work-environment claim occurred within the limitation period." *Green*, 136 S. Ct. at 1781 n.7 (citing *Morgan*, 536 U.S. at 117).

"To allege a continuing violation, the plaintiff must show that all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable limitations period." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165–66 (3d Cir. 2013). The conduct that occurred prior to the limitation period must have involved similar conduct by the same individuals, suggesting a consistent ongoing pattern. *Id.* at 167.

Because Deering completed an EEOC questionnaire on January 3, 2020 (Compl. ¶ 11), the Title VII statute of limitations began running on March 9, 2019. Because Deering filed this lawsuit on April 9, 2020, the NJLAD limitation period began on April 9, 2018.

For clarity, an abridged timeline of events alleged in the Complaint is below, with events relevant to the limitation periods italicized:

<u>February 2006:</u>   Deering's employment begins (*Id.* ¶ 14)

<u>February 2008:</u>   First dated instance of disciplinary memo in Deering's file (*Id.* ¶ 24)[3]

---

[3] Deering alleges three similar events that are undated. Given the chronological progression of the Complaint, it is likely these events occurred prior to February 2008. (Compl. ¶¶ 20-22.)

7

| | |
|---|---|
| November 2017: | Most recent instance of disciplinary memo in Deering's file (*Id.* ¶ 46) |
| | Deering suspended with pay (*Id.* ¶ 47) |
| January 2018: | Tenure charges filed; Deering suspended without pay (*Id.* ¶ 48) |
| *April 9, 2018:* | *NJLAD limitation period begins* |
| August 2019: | Tenure hearing; Deering lost step and salary adjustment for the year (*Id.* ¶ 48) |
| *March 9, 2019:* | *Title VII limitation period begins* |
| March 27, 2019: | Incident with student who is not disciplined (*Id.* ¶ 51) |

Only one incident, then, is alleged to have occurred within the Title VII limitation period: On March 27, 2019, a student told Deering to shut up, using derogatory language and a racial slur, but was not disciplined despite Deering's having filed a memorandum documenting the incident.[4] (Compl. ¶ 51). That incident, as well as the August 2019 tenure decision resulting in Deering's loss of his salary and step adjustment, occurred within the NJLAD limitation period. (*Id.* ¶¶ 48, 49.)

The question, then, is whether the prior incidents are part of the same pattern and can be deemed to be part of the same hostile work environment claim. Deering makes the overall argument that he "has been subjected to a racially hostile work environment for approximately twelve (12) years," and that over the years, he "has been reprimanded for actions that his colleagues took as well, though they faced no discipline." (Pl. Brf. at 7.) Taking the events alleged in the Complaint in the light most favorable to the plaintiff, they set forth an ongoing pattern of unfounded disciplinary action and unfair treatment. Deering has listed at least 14 allegedly discriminatory acts since he

---

[4] Deering also asserts that he "faced inappropriate and disrespectful conduct from multiple parties" upon his return to Middle School (Compl. ¶ 50), but I am not able to analyze that general allegation based on the facts provided in the Complaint.

8

began his employment in 2006. (Compl. at ¶¶ 20, 21, 22, 23-26, 27, 29-30, 31-32, 34, 36-37, 39-40, 43-46, 47, 48, 51) These are plausibly alleged to amount to "more than the occurrence of isolated or sporadic acts." *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (quoting *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 755 (3d Cir. 1995); *c.f. Carroll v. Delaware River Port Auth.*, No. CIV.A. 13-2833 JEI, 2014 WL 116338, at *2 (D.N.J. Jan. 10, 2014) (finding no continuous violation where plaintiff alleged only three acts over the course of nine years). The March 2019 allegation is reasonably alleged to be sufficiently connected to the earlier acts to constitute a continuing violation.

The question of whether the allegations are sufficient, as opposed to merely timely, is not before the court. It is also possible that discovery may further narrow the claim or undercut the allegation that the pattern extended into the limitation period. *See Fried v. JP Morgan Chase & Co.*, 850 F.3d 590, 604 (3d Cir. 2017) (noting that the applicability of the statute of limitations "usually" involves questions of fact) (quoting *Van Buskirk v. Carey Can. Mines, Ltd.*, 760 F.2d 481, 498 (3d Cir. 1985)). For now, suffice it to say that the complaint alleges a continuing pattern, consisting of a hostile work environment that extends into the limitation period. The hostile work environment claim, as alleged, is therefore timely.[5]

---

[5] I note that certain of Deering's allegations set forth discrete incidents that might be individually actionable as Title VII or NJLAD violations. Deering's suspension on November 20, 2017 (Compl. at ¶ 47), his suspension on January 25, 2018 (*id.* at ¶ 48), and his loss of step and salary adjustment on August 9, 2019 (*id.*) are akin to the quintessentially discrete actions described in *Morgan*. *See O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006) ("We can thus take from *Morgan* the following non-exhaustive list of discrete acts for which the limitation period runs from the act: termination, failure to promote, denial of transfer, refusal to hire, *wrongful suspension*, wrongful discipline, denial of training, wrongful accusation.") (emphasis added). If sued upon individually after the expiration of the limitation period, they would be time-barred. Here, however, they are plausibly alleged as part of the ongoing hostile work environment claim.

It is possible to argue that independently actionable incidents should be sued upon promptly, and not "saved up" for use in a hostile environment claim. To the extent *O'Connor* may suggest such a doctrine (in dictum and by negative implication), I think that would be an overreading of *Morgan. Green,* for example, read *Morgan* as

follows: "[A]hostile-work-environment claim is a single 'unlawful employment practice' that includes every act composing that claim, *whether those acts are independently actionable or not.*" *Green v. Brennan*, 136 S. Ct. 1769, 1778 (2016) (emphasis added). In stating that the acts were not independently actionable, *O'Connor* seems to have been making the point that such acts may be included in a hostile environment claim *even if* they are not independently actionable. That interpretation best harmonizes with *Green*.

*Mandel*, a case that cites and discusses *O'Connor*, also suggests that failure to assert a timely claim for a discrete incident does not preclude its later inclusion in a hostile work environment claim:

> It is precisely because the entire hostile work environment encompasses a single unlawful employment practice that we do not hold, as have some of the Circuits, that the plaintiff may not base a suit on individual acts that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on such conduct. The statute does not separate individual acts that are part of the hostile environment claim from the whole for the purposes of timely filing and liability. And the statute does not contain a requirement that the employee file a charge prior to 180 or 300 days 'after' the single unlawful practice 'occurred.' Given, therefore, that the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim. In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment. *Morgan*, 536 U.S. at 117–18, 122 S.Ct. 2061. It is clear that there is no longer a permanency requirement under the continuing violation doctrine . . . . Having clarified our continuing violation doctrine following *Morgan*, we find that Mandel may proceed under a continuing violation theory.

*Mandel*, 706 F.3d at 166–67. *Mandel* went on to state that concerns about plaintiffs storing up grievances upon which they could have filed a prompt claim could be adequately addressed by laches:

> Furthermore, to address the concern that a plaintiff might "unreasonably" delay filing a charge, Morgan explained that employers would have recourse, including equitable defenses such as laches. *Morgan*, 536 U.S. at 121–22, 122 S.Ct. 2061. M & Q raised the doctrine of laches as a defense, but the District Court did not consider it. In light of our clarified doctrine, M & Q should be given an opportunity to argue the laches defense, and the District Court should consider whether it applies.

*Id.* at 167. Much of this, at any rate, exceeds the scope of what may be considered on a motion to dismiss.

10

## IV. Conclusion

Defendant's motion to dismiss (DE 8) is therefore denied. An appropriate order follows.

Dated: February 11, 2021

/s/ Kevin McNulty

_____

Kevin McNulty
United States District Judge